**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| RETINA GROUP OF NEW ENGLAND, P.C. | |
| Plaintiff, | |
| v. | No. 3:20-cv-00121 (MPS) |
| DYNASTY HEALTHCARE, LLC AND ADMINISTRATIVE ADVANTAGE, LLC | |
| Defendants | |
| DYNASTY HEALTHCARE, LLC | |
| Third-Party Plaintiff, | |
| v. | |
| NATIONAL GOVERNMENT SERVICES, INC. | |
| Third-Party Defendant | |

**RULING ON MOTION TO DISMISS THIRD-PARTY COMPLAINT AND MOTION TO JOIN/SUBSTITUTE THE UNITED STATES**

This action presents a novel jurisdictional question under the Medicare Act that arises from a dispute between a medical practice, Retina Group of New England, P.C. ("Retina"), and the medical billing firm, Dynasty Healthcare LLC ("Dynasty"), that handled administrative tasks relating to Retina's participation in Medicare.  According to Retina, Dynasty's negligence in handling these tasks caused the federal government's Medicare Contractor, National Government Services, Inc. ("NGS"), to classify Retina as a nonparticipating provider in the Medicare program instead of a participating provider, leading to lower amounts of

1

reimbursement than Retina otherwise would have received.  Dynasty has responded, in part, by asserting a third-party claim against NGS, claiming that its negligence, rather than any negligence by Dynasty, was the cause of Retina's misclassification as a nonparticipating provider; Dynasty has also sought to join the United States as a third-party defendant.  NGS has moved to dismiss Dynasty's claims for lack of subject matter jurisdiction, and the United States opposes joinder, based on the "channeling" provision of the Medicare Act, 42 U.S.C. §§ 1395ii, 405(h), which generally requires that all Medicare-related claims against the United States and its officers and employees be first presented to the Secretary of the U.S. Department of Health and Human Services (the "Secretary") and exhausted in prescribed administrative processes.

I must decide whether Dynasty's third-party complaint fits within a narrow exception to that channeling requirement for claims that would be foreclosed from judicial review if they could not be asserted in court in the first instance.  Because Retina itself has an incentive to assert in the prescribed administrative process the same basic claim set forth in Dynasty's third-party complaint – that Retina was improperly classified as a nonparticipating provider – and because that is the type of claim that must be asserted in the administrative process, I conclude that the exception does not apply.  I therefore GRANT the motion to dismiss and DENY as moot the motion to join.

The question I resolve in this opinion is a novel one within the Second Circuit, and my ruling effectively terminates Dynasty's claims.  So I find that this order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. 1292(b).  Dynasty must make any application to appeal to the U.S. Court of Appeals for the Second Circuit within 10 days of this order. *See id.*  This action will be

stayed pending Dynasty's decision; and, should Dynasty file such an application, it will be

further stayed until the Court of Appeals acts upon the application; and, if the Court of Appeals

grants the application, it will be stayed during the pendency of the appeal.

## I.    FACTUAL ALLEGATIONS

The following factual allegations are drawn from Dynasty's Amended Third-Party

Complaint, ECF No. 47, and are accepted as true for the purposes of this ruling.  I also set forth

below as background, but do not accept as true, the factual allegations in Retina's Amended

Complaint. ECF No. 46.

### A.  Dynasty's Third-Party Complaint

The Secretary administers Medicare, a national health insurance program for senior

citizens and certain others, through the Centers for Medicare & Medicaid Services ("CMS"),

which contracts with private entities, known as Medicare Administrative Contractors ("MACs"),

to administer the Medicare program, including "enrolling physicians and practices as Medicare

suppliers and processing and paying claims those suppliers submit for Medicare payment." ECF

No. 47 ¶ 2.  At all relevant times, NGS was the MAC for Medicare in the State of Connecticut.

*Id.* ¶ 3. Dynasty "was not, and is not, a provider, supplier or beneficiary under the Medicare

Act." *Id.* ¶ 5.  Rather, Dynasty was retained by Retina to handle its enrollment in the program

and medical billing.

"Prior to October 16, 2015, NGS was provided with the necessary forms and information

for NGS to process the Medicare enrollment application of [Retina], its physicians and/or clinical

staff, as participating providers in the Medicare system." *Id.* ¶ 5.  NGS did not reject the

enrollment application, but unbeknownst to Dynasty, it classified RGNE as a nonparticipating

provider. *Id.* ¶ 6.  The nonparticipating provider classification "was not reasonably based on the

forms and information that had been provided to NGS by … Dynasty [] [and] … was in complete and direct contradiction to the express written information provided by Dynasty [] to NGS." *Id.* ¶ 7.  On October 16, 2015, NGS sent a letter to Dynasty stating that "Retina was enrolled as a nonparticipating provider." *Id.* ¶ 9.  The letter from NGS, however, was never delivered to Dynasty because it had been addressed to the wrong zip code. *Id.* ¶¶ 9-10.  NGS had been "informed or should have known that Dynasty's [] mailing address had a zip code of 27410." *Id.* ¶ 8.  The zip code on the letter "is in a completely different city than the proper address for Dynasty." *Id.* ¶ 9.

Between 2015 and 2018, Dynasty submitted Retina's Medicare billing to NGS for processing. *Id.* ¶ 11.  "NGS processed some of [Retina's] Medicare claims for charges at the participating provider rate, but … processed other charges … at the nonparticipating provider rate between" 2015 through 2019. *Id.* ¶ 12.  "These underpayments were incorrect" because "[t]here is no legal basis under any applicable source of law for NGS to reimburse a provider or supplier under the circumstances of [Retina] in this case at a participating rate for some charges and reimburse at a nonparticipating rate for other charges during the same benefit/enrollment year." *Id.*

"NGS failed to deliver any actual notice to Dynasty[] that NGS had classified [Retina] as a nonparticipating provider or that it was processing some charges for [Retina] at a nonparticipating provider rate." *Id.* ¶ 13.  When NGS reimbursed Retina for charges at the participating provider rate, it "failed to identify such payments as being in conflict with how NGS had actually (although improperly) classified [Retina] in the Medicare system." *Id.* ¶ 14.

In January 2019, the "business relationship" between Retina and Dynasty terminated. *Id.* ¶ 17.  "At no time prior to the termination of the business relationship with [Retina] did anyone

notify [Dynasty] that [Retina] had been classified as a nonparticipating provider by NGS nor that any claimed recoupments, offsets, or suspension of benefits was being made." *Id.*  On or after January 1, 2019, NGS recouped, set off, or suspended payments to Retina due to what NGS alleged were overpayments of amounts paid at the participating provider rate over the previous years.  These actions stemmed from NGS's negligent and incorrect classification of Retina as a nonparticipating provider and led to Retina's receiving less reimbursement for its services and supplies. *Id.* ¶¶ 15-16.

Dynasty claims that NGS processed Retina's Medicare enrollment application in an unreasonable manner, incorrectly entered Retina into the Medicare system as a nonparticipating provider, and failed to rectify its errors. ECF No. 47 ¶ 18.  It asserts that "NGS's active negligence was the direct, immediate cause of any harm claimed by [Retina]" and that "[i]f Dynasty [] is found liable to [Retina] … such liability is the direct result of NGS's actions or omissions, and NGS is responsible to indemnify Dynasty [] for any such liability." *Id.* ¶¶ 22-23; *see also* Second Count ¶ 22 ("Any losses or damages that [Retina] suffered as a result of the incidents alleged against Dynasty … were directly and proximately caused by NGS's negligence ….").

### B.  Retina's Complaint Against Dynasty

According to Retina, Dynasty was aware that Retina had been classified as a nonparticipating provider because Retina had, on many occasions, informed Dynasty "that it felt it was not correctly receiving revenues and/or collections commensurate with the medical services being provided by it, and repeatedly asked [Dynasty] to investigate and reconcile such perceived issue…." ECF No. 46 ¶¶ 25-26.  Dynasty failed to disclose to Retina the misclassification "and repeatedly assured Retina that there were no issues…." *Id.* ¶ 27.  Retina

alleges that in 2019, Dynasty assigned its rights and obligations under its contractual arrangement with Retina to Administrative Advantage, LLC. ECF No. 46 ¶ 21.  NGS sent Dynasty a letter dated April 19, 2019, to confirm that a change of address had been processed by NGS; the letter also stated that Retina was a nonparticipating supplier under Medicare. *Id.* ¶ 22. "At some point" thereafter, Dynasty or Administrative Advantage forwarded the April 19, 2019 letter to Retina. *Id.* ¶ 23.  Only then did Retina discover that it had been classified as a nonparticipating provider. ECF No. 46 ¶ 24.

Retina "requested from Dynasty … a copy of any correspondence from NGS responsive to the initial Medicare enrollment application" that had been filed in 2015, and received, in response, the October 16, 2015 letter that had been mailed to the wrong zip code. *Id.* ¶¶ 28-29. The letter classified Retina as a "nonparticipating" supplier in the Medicare System effective October 1, 2015, and "notified Dynasty that it could request reconsideration of any determinations made in the letter within 60 days of the postmark date of the same." *Id.* ¶¶ 30-31. Dynasty never appealed or requested reconsideration of Retina's status. *Id.* ¶ 33.  Further, although Dynasty could have rectified Retina's nonparticipating status at the beginning of each calendar year following 2015, it "failed to do so on each such occasion." *Id.* ¶ 35.  As a result of the "nonparticipating" misclassification from October 1, 2015 through its filing of the complaint, Retina has received "substantially less in Medicare reimbursements for services it has provided as a medical supplier and/or drugs it has administered or supplied ancillary or incident to such services [than] it otherwise would have received had Dynasty properly performed its obligation to credential it as a 'participating' supplier." *Id.* ¶ 37.  In addition, Retina has received "recoupment letters from NGS demanding recovery of alleged Medicare overpayments made to [Retina] which should allegedly not have been paid in light of [Retina's] nonparticipating

status," and Retina has had to reimburse amounts previously received as a result of these letters. Retina would "not have been liable for such recoupments or sustained any losses related to same but for Dynasty's failure to properly classify it as a participating supplier ...." *Id.* ¶¶ 38-39.

### C. Procedural History

Retina brought this action against Dynasty in Connecticut state court, and the case was later removed to this Court. ECF No. 1.  Retina filed an Amended Complaint alleging breach of contract, negligence, fraud, negligent misrepresentation, violations of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110 et seq., and breach of fiduciary duty.[1] ECF No. 46 at 2, 20, 25, 38, 43, 44.  Dynasty filed a third-party complaint against NGS asserting claims for indemnification and apportionment, as well as claims for indemnification and apportionment against the United States pursuant to the Federal Tort Claims Act ("FTCA"). ECF No. 47. Dynasty also filed a motion to join/substitute and serve the United States as a third-party defendant for the claims arising under the FTCA.  NGS and would-be defendant the United States move to dismiss the third-party complaint for lack of subject matter jurisdiction and oppose Dynasty's motion to join the United States. ECF No. 57.

## II.    LEGAL STANDARD

NGS moves to dismiss Dynasty's Third-Party Complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  A case may be properly dismissed pursuant to Rule 12(b)(1) when a court "lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000).  When deciding whether to grant a 12(b)(1) motion to dismiss, a court "must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to [the pleader]." *McGinty v.*

---

[1] Retina also brought claims against Administrative Advantage, LLC, for breach of contract, negligence, and breach of fiduciary duty. ECF No. 46 at 45, 51, 56.

*State,* 193 F.3d 64, 68 (2d Cir. 1999).[2]  A court may also refer to evidence outside the pleadings, and the claimant has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. *See Makarova,* 201 F.3d at 113 (citations omitted).

## III.   DISCUSSION

### A.  Dynasty's Claims Arise Under the Medicare Act

Dynasty asserts several bases for subject matter jurisdiction in its Amended Third-Party Complaint: diversity jurisdiction under 28 U.S.C. § 1332, jurisdiction under the FTCA, 28 U.S.C. § 1346(b), and federal question jurisdiction under 28 U.S.C. § 1331.  As NGS and the United States note, however, 42 U.S.C. § 405(h), a provision of the Social Security Act extended to Medicare Act cases by 42 U.S.C. § 1395ii, channels "claim[s] arising under" both Acts through "the proper administrative proceedings by forbidding federal suits that have not been administratively reviewed first." *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 149 (2d Cir. 2007) (discussing Section 405(h) in context of claim arising under Social Security Act); *Potts v. Rawlings Co., LLC*, 897 F. Supp.2d 185, 191 (S.D.N.Y. 2012) ("judicial review of claims arising under the Medicare Act is available only after the Secretary renders a final decision on the

---

[2] The Second Circuit has not always been clear on this point, stating, at times, that on a Rule 12(b)(1) motion, the court should *not* draw inferences in the pleader's favor. *Compare McGinty*, 193 F.3d at 68 (in reviewing dismissal under Rule 12(b)(1), "we must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to plaintiffs.") *with Shipping Fin. Services Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) ("[W]hen the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.") and *J.S. ex rel. N.S. v. Attica Central Schools*, 386 F.3d 107, 110 (2d Cir. 2004) ("On appeal of the district court's order on the motion to dismiss [under Rule 12(b)(1)], we must accept as true all material factual allegations in the complaint, but we are not to draw inferences from the complaint favorable to plaintiffs.").  In *Morrson v. Nat'l Australia Bank Ltd.*, 547 F.3d 167 (2d Cir. 2008), the court suggested that these different statements were reconcilable, although it did not explain how: "The court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff [on a Rule 12(b)(1) motion], "but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Id.* at 170. In any event, in this ruling, I take as true the allegations in Dynasty's third-party complaint and draw all reasonable inferences in its favor.

claim" (internal quotation marks and alterations omitted)).[3]  The United States Supreme Court

has instructed that the "claim arising under" language in Section 405(h) is to be construed "quite

broadly." *Heckler v. Ringer*, 466 U.S. 602, 615 (1984) (concluding that challenges to the

Secretary's policy regarding benefits for a surgical procedure arose under the Medicare Act, even

though claims sought "only declaratory and injunctive relief and not an actual award of

benefits").  A claim arises under the Medicare Act if the claim is "inextricably intertwined" with

a claim for Medicare benefits or if "both the standing and the substantive basis for the

presentation of the claims is the [Medicare Act]." *Id.* at 614-15 (internal quotation marks

omitted).

Even when I accept all of Dynasty's allegations as true and construe them in the light

most favorable to it, it is clear that its claims for indemnification and apportionment arise under

the Medicare Act because they are inextricably intertwined with Retina's claims for Medicare

benefits and because the substantive basis for those claims is the Medicare Act.  NGS's functions

as a MAC are set forth in the Medicare Act and include determining payment amounts, making

payments, communicating with providers, and performing any "other functions … necessary to

carry out the purposes of this subchapter." 42 U.S.C. § 1395kk-1(a)(4).  Section 1395cc(j)

authorizes the Secretary to establish by regulation a process for the enrollment of providers and

suppliers under the Medicare Act, and the Secretary has done so. *See* 42 C.F.R. § 424.510.

Dynasty alleges that NGS negligently mishandled the enrollment of Retina and subsequent

---

[3] Section 405(h) provides: "The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. *No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.*" Emphasis added.  Section 1395ii of Title 42 provides that several provisions of the Social Security Act, including 405(h), "shall also apply with respect to [the Medicare Act] to the same extent as they are applicable with respect to [the Social Security Act], except that, in applying such provisions with respect to [the Medicare Act], any reference therein to the Commissioner of Social Security … shall be considered a reference to" the Secretary.

processing of its claims in the following ways: (1) classifying Retina as a nonparticipating provider; (2) sending the letter regarding Retina's classification to the wrong address; (3) processing Retina's billing inconsistently; (4) failing to provide notice to Dynasty regarding Retina's classification; and (5) failing to identify errors in payments made to Retina. ECF No. 47 ¶¶ 7, 9, 12, 13, 14; *see also* ECF No. 47 at 7-8 ¶ 18.   Ultimately, according to Dynasty's allegations, those actions and failures to act resulted in Retina's misclassification as a nonparticipating provider, which both Dynasty and Retina allege resulted in Retina's being reimbursed at incorrectly depressed rates and to which they both attribute all of the harm incurred by Retina in this case. *See* ECF No. 46 at ¶¶ 37-38 (Retina alleging that "[a]s a result of such 'nonparticipating' misclassification," it has received less in Medicare reimbursements than it otherwise would have and has had to reimburse NGS for alleged overpayments); ECF No. 47 ¶¶ 16, 18i, and Second Count, ¶ 22 (Dynasty alleging that classification of Retina as nonparticipating provider resulted in Retina's "receiving less in payments" for its services and supplies, that NGS "negligently sought and/or obtained recoupments" from Retina, and that "[a]ny losses or damages that [Retina] suffered as result of the incidents alleged against [Dynasty] were directly and proximately caused by NGS's negligence").   Dynasty's claims are "inextricably intertwined" with Retina's claims for benefits under the Medicare Act, *Ringer*, 466 U.S. at 614, and retroactive reclassification of Retina as a participating provider and payment of its claims as such by NGS would remedy all of the harm alleged by both Retina and Dynasty and extinguish all of their claims in this lawsuit. *See id.* at 618 (rejecting argument that denial of benefits for surgical procedure was "collateral" issue that escaped channeling effect of Section 405(h) because there was "no colorable claim that  an erroneous denial of [surgical] benefits in the early stages of the administrative process will injure [the claimants] in a way that cannot be

remedied by the later payment of benefits"); *see also Kaiser v. Blue Cross of Cal.*, 347 F.3d 1107 (9th Cir. 2003) (constitutional, statutory, and common law claims brought by owners of home health agency allegedly damaged after Medicare contractor ceased making payments due to previous overpayments were "inextricably intertwined" with the agency's claims for Medicare reimbursement because "[h]ad the [owners] been immediately granted a satisfactory [repayment plan], for example, or had they never accrued an overpayment in the first place, they never would have brought this case.  Hearing most of [their] claims would necessarily mean redeciding [the Medicare contractor's decisions].").

Dynasty asserts that it is "not a provider or supplier, it rendered no treatment to any Medicare beneficiary, and it is not seeking reimbursement for providing services to any Medicare beneficiary." ECF No. 59 at 11.  It contends that its claims for indemnification and apportionment "arise under and are based on substantive Connecticut state law," not the Medicare Act. *Id.* at 13.  While it is true that Dynasty is not a provider or supplier, Retina is one, and Dynasty's claims here are derivative of Retina's claims.  Although Dynasty asserts in its brief that a factfinder in this case could "conclude that [Retina] was reimbursed correctly at the nonparticipating rate from the perspective of Medicare statutes, regulations, and guidance, but that the independent tortious conduct of NGS creates liability against it in this case vis-à-vis" Dynasty, ECF No. 59 at 12, it does not explain how this could happen or how its third-party claims are otherwise independent of Retina's claims against it.  In any event, Connecticut law makes clear that the indemnity and apportionment claims Dynasty asserts are derivative claims. *See, e.g., Rohr v. Rocky River Business & Prof'l Ctr. Unit Owner's Ass'n, Inc.*, No. LLICV-076000202S, 2008 WL 4049767 *3 (Conn. Super. Ct. June 18, 2008) ("[A]n apportionment complaint is derivative of the initial complaint filed by the plaintiff.  The claims contained in the

apportionment complaint would not exist absent the initial complaint ….”); *Andresen v. Santa Fuel, Inc.*, No. CV-970057407S, 2000 WL 288270 *1 (Conn. Super. Ct. March 8, 2000) (“An indemnification action is proper in those situations where the third-party action is derivative of the original defendant’s liability under the original action.”).  Dynasty’s third-party complaint owes its existence to Retina’s allegation that it was improperly denied benefits due to its improper classification as a nonparticipating provider under the Medicare Act.

Nor does it matter that Dynasty’s claims invoke state law, because the “arising under” language of Section 405(h) sweeps broadly enough to embrace state law claims that are, “at bottom,” *Ringer*, 466 U.S. at 614, about reimbursement under the Medicare Act. *Potts,* 897 F. Supp. 2d at 192 (finding that claim for declaratory judgment under New York statute arose under the Medicare Act and noting that “[t]he Courts of Appeals advise that courts should be wary of claims that are cleverly concealed claims for benefits” (internal quotation marks omitted; citing cases)); *Bentley v. The Wellpoint Companies, Inc.*, No. 11-cv-8963 (CM), 2012 WL 546991, at *5 (S.D.N.Y. Feb. 17, 2012) (“Here, although Plaintiff’s Complaint sounds in breach of contract, his claims ‘arise under’ the Medicare statutes such that judicial review is limited to the procedures and remedies found at 42 U.S.C. §§(g) and (h).”); *Bodimetric Health Serv., Inc. v. Aetna Life & Cas.*, 903 F.2d 480, 487 (7th Cir. 1990) (“If litigants who have been denied benefits could routinely obtain judicial review of these decisions by recharacterizing their claims under state and federal causes of action, the Medicare Act's goal of limited judicial review for a substantial number of claims would be severely undermined.”) (citation omitted); *Marin v. HEW, Health Care Fin. Agency*, 769 F.2d 590, 592 (9th Cir. 1985) (claims that Medicare contractor negligently failed to process cost reports arose under the Medicare Act).

The cases Dynasty cites to resist the notion that its claims arise under the Medicare Act are distinguishable and, in any event, not binding on me.  In *Ardary v. Aetna Health Plans of Cal.*, 98 F.3d 496, 497 (9th Cir. 1996), the administrator of a health maintenance organization plan providing Medicare benefits allegedly refused to authorize airlift transportation to a better equipped hospital for a woman who had suffered a heart attack in a rural area and who subsequently died as a result.  Her husband and children brought a wrongful death claim, leading the court to address the "thorny jurisdictional question" of whether the Medicare Act precluded "the heirs of a deceased Medicare beneficiary from bringing state law claims for wrongful death against a private Medicare provider *when those claims do not seek recovery of Medicare benefits* but instead seek compensatory and punitive damages on the grounds that the provider both improperly denied emergency medical services and misrepresented its managed care plan to the beneficiary[]." *Id.* at 499 (emphasis added).  The court concluded that, although the claims were predicated on a failure to authorize the airlift, they did not arise under the Medicare Act because plaintiffs were not seeking to recover benefits and "[the mother's] death … cannot be remedied by the retroactive authorization or payment of the airlift transfer." *Id.* at 500.

In *United States v. Blue Cross & Blue Shield of Ala., Inc.*, 156 F.3d 1098 (11th Cir. 1998) a *qui tam* relator  brought suit under the False Claims Act, alleging that a Medicare contractor had "been reimbursing Alabama hospitals … for interest costs that [were] not chargeable to Medicare[]." *Id.* at 1101.  The court found that the claims alleging fraud against the United States government "ar[ose] under the False Claims Act, not the Medicare Act, and federal-question jurisdiction under section 1331 [was] available" because the court was not "faced with a claim for benefits from a dissatisfied Medicare beneficiary" or with "a claim cognizable within the administrative framework" provided in section 405. *Id.* at 1110.  It also found that a contrary

13

ruling would undermine one of the purposes of the False Claims Act – to provide "incentives for informed agents to monitor their employers and bring suit for violations." *Id.*

By contrast, in this case I am "faced with a claim for benefits from a dissatisfied" Medicare provider – and its dissatisfied billing company.  Further, the core claim in Retina's – and Dynasty's – complaint is one that was "cognizable within the administrative framework," i.e., Retina could have appealed its "nonparticipating" provider designation. *See, e.g.,* 42 C.F.R. §§ 405.803 & 424.545 (providing appeal rights for providers and suppliers denied enrollment in Medicare program).  Indeed, in its affirmative defenses to Retina's allegations, Dynasty faults Retina for failing to do so. ECF No. 52 at 11 (Dynasty's Fourth Affirmative Defense asserting that "Plaintiff was itself negligent in at least one … of the following respects …  It failed to pursue and/or adequately and fully pursue available remedies, including but not limited to administrative processes, in a timely manner to reduce or eliminate its damages alleged in this case.").  Finally, as noted and unlike in *Ardary*, retroactive reimbursement of Retina's claims as a participating provider would remedy all the harm alleged in this case.  I therefore conclude that Dynasty's claims arise under the Medicare Act.

## B. Dynasty's Claims Do Not Fit within the *Illinois Council* Exception to the Channeling Requirement

Dynasty argues that if its third party complaint is deemed to arise under the Medicare Act, it should qualify for an exception to the channeling requirement of Section 405(h) recognized by the Supreme Court in *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1 (2000) for cases "where application of [Section] 405(h) would not simply channel review through the agency, but would mean no review at all." *Id.* at 19.  Dynasty argues that it fits within this exception because, as a non-party, it could not pursue any administrative remedy

under the Medicare Act. ECF No. 59 at 4, 7, 10.  I conclude that although Dynasty itself may be unable to seek administrative review, application of the channeling requirement here would not result in complete preclusion of judicial review and, thus, the *Illinois Council* exception does not apply.

Section 405(h) "demands the channeling of virtually all legal attacks through the agency, [] assur[ing] the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts applying ripeness and exhaustion exceptions case by case." *Ill. Council*, 529 U.S. at 13 (internal quotation marks omitted).  The channeling requirements is not limited to "claims for monetary benefits," but requires channeling of claims for "money, claims for other benefits, claims of program eligibility, and claims that contest a sanction or remedy" because they "may all similarly rest upon individual fact-related circumstances, may all similarly dispute agency policy determinations, or may all similarly involve the application, interpretation, or constitutionality of interrelated regulations or statutory provisions." *Id.* at 14.

The Court in *Illinois Council* carved out an exception to the channeling requirement for cases where its application "would mean no review at all." *Id.* at 19.  The Court distinguished such "total preclusion of [judicial] review" from mere "postponement of review," making clear that the latter would not suffice to excuse compliance with the channeling requirement. *Id.*  In *Illinois Council*, an association of nursing homes challenged regulations promulgated by the Secretary that imposed penalties and sanctions for violating Medicare Act standards. *Id.* at 6-7, 9. The association argued that § 405(h) should not apply because pursuing review through the agency would have caused the association hardship. *Id.* at 21.  The Court indicated that application of § 405(h) should not turn on individual hardship, but whether "as applied generally

15

to those covered by a particular statutory provision, hardship likely found in many cases turns what appears to be simply a channeling requirement into complete preclusion of judicial review." *Id.* at 22-23.  The association also argued that, "as an association, not an individual, it [could] not take advantage of the special review channel, for the statute authorizes review through that channel only at the request of a dissatisfied institution or agency." *Id.* at 24.  The Court rejected that argument, too, stating: "The [association] speaks only on behalf of its member institutions, and thus has standing only because of the injury those members allegedly suffer.  It is essentially their rights to review that are at stake.  And the statutes that create the special review channel adequately protect those rights." *Id.* (internal citations omitted).

Dynasty argues that the exception for "complete preclusion of judicial review" recognized in *Illinois Council* should apply in this case.  It contends that (1) as a non-party, it could not have sought administrative review, (2) there is nothing in its allegations, which I must accept as true, that permits an inference that it was Retina's agent for all dealings with NGS, and (3) it no longer had any business relationship with Retina when NGS sought to recoup amounts from Retina.  These contentions focus on whether Dynasty itself could have asserted its claims through the Medicare administrative process.  The focus of *Illinois Council*, however, is on whether a particular type of claim is subject to judicial review or on whether a category of persons who might make that claim can secure judicial review, not on whether a particular party can secure such review. 529 U.S. at 22-23 ("[W]e do not hold that an individual party could circumvent [the Medicare Act's] channeling requirement simply because that party shows that postponement would mean added inconvenience or cost in an isolated, particular case.  Rather, the question is whether, *as applied generally to those covered by a particular statutory provision*, hardship likely found in many cases turns what appears to be simply a channeling

requirement into complete preclusion of judicial review." (emphasis added)); *id.* at 24 (rejecting argument that association's inability to access administrative review lifted the bar of Section 405(h), because the association "speaks only on behalf of its member institutions" and "[i]t is essentially their rights to review that are at stake."); *see also Council for Urological Interests v. Sebelius*, 668 F.3d 704, 712 (D.C. Cir. 2011) ("[T]he *Illinois Council* exception is not intended to allow section 1331 federal question jurisdiction in every case where section 405(h) would prevent a particular individual or entity from seeking judicial review…. [T]he *Illinois Council* exception is primarily concerned with whether a particular *claim* can be heard through Medicare Act channels.…" (emphasis in original)). Dynasty does not dispute that the claim at the heart of this case, which asserts that Retina was negligently misclassified as a nonparticipating provider and its reimbursement consequently reduced to incorrect levels, can be heard through Medicare Act channels. Even if Dynasty is correct that *it* could not seek review, there is no doubt that the Medicare Act provides a process for reviewing this type of claim. *See Marin*, 769 F.2d at 592 (channeling provision of Section 405(h) applied to provider's claim for damages caused by Medicare contractor's negligent failure to process provider's cost reports).

Although the Second Circuit has not addressed this issue, several Courts of Appeals have likewise treated the *Illinois Council* exception as one aimed at avoiding "complete preclusion" of judicial review for types of claims or for categories of parties, rather than for a specific party. In particular, they have focused on whether there is an "adequate proxy" with standing and an incentive to pursue a claim in cases where the party asserting that claim in court could not itself access the administrative process. *See Sensory Neurostimulation, Inc. v. Azar*, 977 F.3d 969, 983 (9th Cir. 2020) ("We agree [with out-of-circuit cases] … that if another party can bring the same claim through administrative channel, and is sufficiently incentivized to do so, then some review

is available, and the [*Illinois Council*] exception does not apply."); *Southwest Pharmacy Solutions v. CTRS for Medicare*, 718 F.3d 436, 445 (5th Cir. 2013) ("[P]recedent from this circuit and our sister circuits merely requires that the proxies have some incentive to bring a regulatory challenge on behalf of the aggrieved party."); *Council for Urological Interests v. Sebelius*, 668 F.3d at 708 ("[S]ection 405(h) applies so long as Medicare Act review of a claim is available to some, though perhaps not all, of a class of affected parties.").  One district court within this circuit, as far as I have found, has applied the same principle, stating:

> While the Second Circuit has not addressed the exception in *Illinois Council* in depth … courts of appeal are fairly uniform in requiring a plaintiff to show there is no way of having their claims reviewed, there is complete preclusion, or there exists a serious practical roadblock to having their claims reviewed in any capacity, administratively or judicially. This standard is not met where third party physicians are sufficient proxies for the plaintiffs since the physicians had adequate financial incentive to pursue a regulatory challenge on the plaintiffs' behalf.  However, the standard is met where the possible proxies have little incentive to pursue the plaintiff's challenge to the regulations.

*Regeneron Pharm., Inc. v. U.S. Dept. of Health & Human Serv.*, No. 20-cv-10488 (KMK), 2020 WL 7778037, at * 8 (S.D.N.Y. Dec. 30, 2020) (citations, internal quotation marks, and alterations omitted).

To determine whether an adequate proxy exists, courts have examined whether the interests of a prospective proxy align with the interests of the party that is prevented from seeking review, such that the proxy would be willing to pursue that party's claim or would at least have an incentive to do so.  The Ninth Circuit describes the inquiry as "objective" in that the question is not whether the particular party seeking review could have found an "agreeable proxy", but whether an adequate proxy exists. *Sensory Neurostimulation, Inc.*, 977 F.3d at 983 ("It may not be easy for a particular supplier to find an agreeable proxy, but particular suppliers' difficulties do not affect the analysis.  Whether there would be 'no review at all' is an objective inquiry.") (citing *Ill. Council*, 529 U.S. at 22-23)).  In *Sensory Neurostimulation*, the court found

that although a medical device supplier could not seek administrative review of an unfavorable national coverage determination with respect to its device, it could recruit a Medicare beneficiary adversely affected by the determination to seek review through the administrative process and, in that way, "effectively obtain judicial review." *Id.* at 984.  By contrast, in *Council for Urological Interest*, the D.C. Circuit found that no adequate proxy existed for physician-owned joint ventures that sought to challenge a regulation under the Stark Law, 42 U.S.C. § 1395nn, but lacked access to the administrative process.  The court determined that hospitals, a proxy proposed by the Government, actually benefited from the restrictions that the regulation imposed on the physician-owned joint ventures, including by permitting them to purchase the equipment owned by the joint ventures at "fire-sale prices." 668 F.3d at 713; *see also id.* at 712 ("Although we agree that the *Illinois Council* exception is primarily concerned with whether a particular *claim* can be heard through Medicare Act channels, we see nothing in the case law requiring us to disregard factors that speak to a potential proxy's willingness and ability to purse the plaintiff's claim….  In cases where the only entities able to invoke Medicare Act review are highly unlikely to do so, their unwillingness to pursue a Medicare Act claim poses a serious practical roadblock to judicial review." (internal citations and quotation marks omitted; emphasis in original)).  Thus, the court concluded that hospitals were not suitable proxies and the *Illinois Council* exception applied because "invoking section 405(h) in this case would have the practical effect of turning what appears to be simply a channeling requirement into *complete* preclusion of judicial review." *Id.* at 714 (citation and internal quotation marks omitted; emphasis in original).

Applying the reasoning of these cases here, I find that the financial interests of providers such as Retina vis-à-vis the Medicare program are plainly aligned with those of the medical billing companies they retain (such as Dynasty) to submit claims to Medicare on their behalf, and

that providers are likely to press the types of claims made in this case through the administrative

process.  Both providers and billing companies stand to gain financially by challenging improper

provider designations that result in underpayments; indeed, the providers likely have a larger

financial incentive than the billing companies to bring such challenges because they are likely to

gain a larger share of the corrected payments. *See Southwest Pharmacy Solutions*, 718 F.3d at

445 ("Both [parties] could receive a financial benefit from overturning the [regulation]—albeit of

different magnitudes—and have similar incentives to initiate a regulatory challenge.").  To be

sure, Retina and Dynasty are currently adversaries in this litigation, but that does not alter the

alignment of the financial interests of the categories each represents.  There is thus no reason to

believe that applying Section 405(h) in this case will result in the "complete preclusion" of

judicial review for claims by medical billing companies that Medicare contractors have

misclassified their clients to the financial detriment of the billing companies and their clients.

Further, even now both Retina and Dynasty retain a similar financial interest in securing a

retroactive reversal of NGS's determination that Retina is a nonparticipating provider – one that,

as noted above, would extinguish both of their claims in this lawsuit – and it may be the case that

Retina could still bring an administrative claim seeking that relief,[4] although I do not express an

opinion on that issue.  Finally, although Retina's *current* posture as a plaintiff suing Dynasty for

damages raises doubt about whether it would be willing to take any steps that might redound to

the benefit of its adversary, nothing in *Illinois Council* or the cases applying it suggests that the

changing status of the relationship between particular parties should affect the analysis of the

---

[4] The sixty-day statute of limitation is subject to equitable tolling, suggesting that Retina could have brought the challenge in 2019 when the misclassification was discovered, even though the deadline to seek review had passed. *See Bowen v. City of New York*, 476 U.S. 467, 481 (1986) ("[W]e conclude that application of a traditional equitable tolling principle to the 60-day requirement of § 405(g) is fully consistent with the overall congressional purpose and is nowhere eschewed by Congress." (citation and internal quotation marks omitted).

question "whether, *as applied generally to those covered by a particular statutory provision*, hardship likely found in many cases turns what appears to be simply a channeling requirement into complete preclusion of judicial review." *Illinois Council*, 529 U.S. at 22-23 (emphasis added); *see also Sensory Neurostimulation, Inc.*, 977 F.3d at 983 ("It may not be easy for a particular supplier to find an agreeable proxy, but particular suppliers' difficulties do not affect the analysis.  Whether there would be 'no review at all' is an objective inquiry.").[5]

### C.  Second Circuit Case Law Does Not Mandate A Different Result

As noted, the Second Circuit has not addressed the *Illinois Council* exception in circumstances similar to this case.  Dynasty nonetheless relies heavily on the Circuit's decision in *Binder & Binder PC*, 481 F.3d 141, arguing that it is "controlling authority" here.  ECF No. 59 at 8.  The plaintiff in *Binder*, a law firm, sued for a declaratory judgment that it was entitled to keep attorneys' fees it had received from the Social Security Administration for representing an individual who had applied for and received Social Security disability benefits. *Id.* at 142.  The individual, whose benefits were reduced by the amount of the fees, objected to the award of attorneys' fees because of her dissatisfaction with the firm's services and on the ground that her debt to the law firm had been discharged in her bankruptcy. *Id.* at 144.  Invoking the *Illinois Council* exception, the Second Circuit held that the law firm's claim was not subject to the channeling requirement of Section 405(h), because as a non-party in the proceedings before the Social Security Administration, it could not have availed itself of the administrative review process, and "were [federal question jurisdiction under 28 U.S.C. Sec. 1331] unavailable, [the

---

[5] To find otherwise, or to treat the relevant categories as plaintiff and third-party plaintiff rather than provider and medical billing company, would create an exception to the channeling requirement whenever there is a souring in the business relationship between the particular party seeking to challenge the Medicare determination and the proxy that could press the claim in the administrative process.  As NGS and the United States point out, ECF No. 60 at 9, such a result would also permit a provider or supplier to circumvent the administrative process for contesting Medicare determinations by suing its medical billing company, which, in turn, could complete the administrative run-around by naming the Medicare contractor as a third-party defendant.

law firm] would be unable to obtain any judicial review of its claims under the [Social Security] Act." *Id.* at 150. The facts of *Binder & Binder* are distinguishable from the situation here and in the "proxy" cases discussed above.  The law firm could not rely on its former client to press its claim because, even had their relationship remained amicable, the two had conflicting financial interests with respect to the attorneys' fees, which, as noted, were deducted from the former client's benefits award.  Nor is there any other apparent proxy when a law firm seeks attorneys' fees for its representation of a client from the Social Security Administration, meaning that application of the channeling requirement to such a claim would result in the "complete preclusion" of judicial review.  As shown, that is not the case here.

    *Furlong v. Shalala*, 238 F.3d 227 (2nd Cir. 2001), which the parties do not mention in their briefs but which also applied the *Illinois Council* exception, is also consistent with the result I reach today. That case was brought by physicians who did not accept assignments of their patients' rights to reimbursement from Medicare ("non-assigned physicians"), permitting them to bill their patients directly at a rate up to fifteen percent higher than the Medicare-approved charge; the non-assigned physicians challenged a policy that limited the rate they could charge for certain types of surgical procedures.  Because the physicians' non-assigned status meant that they could not bring their challenge in the administrative process, the court invoked the *Illinois Council* exception to find that their challenge fell outside the scope of section 405(h).  Although the court did not address the issue of "proxies" in *Furlong*, it is apparent that there weren't any. The patients would be billed at higher rates if the non-assigned physicians' challenge succeeded and thus had no incentive to challenge the policy, 238 F.3d at 229; and the assigned physicians – those who accepted patients' assignment of Medicare benefits – were already having success in challenging the rate-limiting policy in individual adjudications before administrative law judges,

but their success was not affecting the Government's application of its rate-limiting policy to the non-assigned physicians. *Id.* at 231.

Further, a close reading of *Furlong* offers an independent reason that the channeling requirement should apply in this case, even if it means there would be no judicial review for the type of claim Dynasty is making.  The court in *Furlong* interpreted *Illinois Council* to preserve part of the formulation of the channeling requirement set forth in the Supreme Court's earlier decision in *Bowen v. Michigan Acad. of Fam. Physicians*, 476 U.S. 667 (1986).  That decision had distinguished between "'the amount of the Medicare payment to be made on a particular claim,' ('amount' claims)[,] which have been held to fall within the channeling provisions of section 405(h) … and 'challenges to the validity of the Secretary's instructions and regulations' ('methodology' claims), which have been held not to be the kinds of determinations delegated by Congress to the insurance carriers and to be therefore exempt from the 405(h) bar." *Furlong*, 238 F.3d at 232 (quoting *Michigan Academy*).  The *Furlong* court stated that although "the status of the amount/methodology distinction after *Illinois Council* is somewhat unclear," the *Illinois Council* Court had "confirmed that the kinds of challenges previously termed 'amount determinations' were well within the scope of the section 405(h) bar." *Id.* at 233.  The *Furlong* court went on to suggest that even though the non-assigned physicians had no right to pursue their claims in the administrative process, their claims would be barred by the channeling requirement if those claims were found to be "amount" claims, i.e., "where the claim is merely that the insurance carrier misapplied or misinterpreted valid rules and regulations."  *Id.* at 234 (internal quotation marks omitted).  In the end, the *Furlong* court found, after careful analysis of the Secretary's communications regarding the surgical procedure at issue, that "plaintiffs' claims are best construed" as challenges to an agency policy rather than "as mere challenges to the

mechanical application" of a policy. *Id.* at 236. In other words, the claims at issue in *Furlong* were not "amount" claims.

When this line of reasoning is applied to Dynasty's claims, it confirms that the bar of Section 405(h) should apply. Nothing in Dynasty's third-party complaint challenges any policy, rule, or "methodology" of the Secretary or NGS. Rather, Dynasty is challenging "amount" determinations, i.e., it is alleging that NGS negligently misapplied existing law governing provider enrollment applications in a way that resulted in underpayments. *See* ECF No. 47 ¶ 7 ("The classification by NGS of [Retina] as a nonparticipating provider was not reasonably based on the forms and information that had been provided to NGS by … Dynasty…. Under the circumstances, there was no legal basis for NGS to enroll [Retina] as a nonparticipating provider."); *id.* ¶ 12 (NGS's processing of charges for Retina at the nonparticipating provide rate resulted in "underpayments [that] were incorrect. There is no legal basis … for NGS to reimburse a provider … under the circumstances of [Retina] in this case at a participating rate for some charges and reimburse at nonparticipating rate for other charges during the same benefit/enrollment year."). Dynasty's third-party complaint sets forth classic "amount" claims.

## IV.    CONCLUSION

I conclude that the channeling requirement of Section 405(h) bars Dynasty's third-party complaint, and I grant NGS's motion to dismiss for lack of subject matter jurisdiction. I deny Dynasty's motion to join and serve the United States as moot. As noted above, Dynasty may apply to the Second Circuit within 10 days of this order for permission to file an interlocutory appeal. Should Dynasty choose not to make such an application, it shall file a statement on the docket so indicating no later than April 9, 2021. In the meantime, the case is stayed.

IT IS SO ORDERED.


_____  /s/  _____

Michael P. Shea, U.S.D.J.


Dated:  Hartford, Connecticut

March 30, 2021